UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************

BRIAN NEWARK

    Plaintiff

v.                       Civ. No: 04 11839 WGY

GILBERT L. TRUDEAU, and
T. C. (CHRIS) MATTOCKS

    Defendants

*******************************

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
### FOR A PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction preventing defendants from removing him as teacher of the Current Events course for the coming year. He submits this memorandum and his affidavit in support of that request. As these filings demonstrate, defendants' attempt to remove plaintiff as Current Events teacher for the coming year is in retaliation for plaintiff's exercising and asserting rights secured to him by the First and Fourteenth Amendments to the United States Constitution. As explained herein, plaintiff's request for preliminary injunction should be granted because (1) he is likely to prevail on the merits of his claims, (2) he will suffer irreparable injury in the absence of injunctive relief, (3) the injury to plaintiff outweighs any harm which granting injunctive relief would inflict on defendants, and (4) the public interest would be served by issuance of the injunction. *Aponte v. Calderon*, 284 F.3d 184, 191 (1st Cir. 2002); *Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986).

The chain of events giving rise to plaintiff's claims is as follows. Since 2000 plaintiff has taught the Current Events course at Bellingham High School. The course is designed to introduce students to the contemporary social, political, economic, and cultural world. Discussion of current events at the national and international levels is the main focus of the course. (Plaintiff's Affidavit ¶ 5, Exhibits A and B)

On May 10, 2004 plaintiff gave his Current Events students an assignment involving having them look at photographs concerning the Abu Ghraib prison which were on the CNN and MSNBC web sites and to write a description of what those photographs showed. (Plaintiff's Affidavit ¶ 6) In connection with giving the assignment plaintiff told his students that they did not have to do the assignment if it was upsetting to them and, upon request, he would give a substitute assignment. (Plaintiff's Affidavit ¶ 7)

On May 12, the defendant Trudeau, the high school principal, instructed plaintiff to stop any use of Abu Ghraib prison photographs. Plaintiff explained that he had not required any student to look at the photographs. Trudeau told plaintiff that the defendant Mattocks, the superintendent of schools, had received a complaint from a parent and, in response, was requiring plaintiff to stop using the photographs altogether. Trudeau further informed plaintiff that he would be written up for insubordination if he persisted in using the photographs. (Plaintiff's Affidavit ¶ 8)

That same day, the American Civil Liberties Union of Massachusetts (ACLUM) faxed the defendants a letter objecting to the restriction on the use of Abu Ghraib photographs and informing the defendants that the restriction was manifestly unconstitutional. (Plaintiff's Affidavit ¶ 9, Exhibit C) On May 13 plaintiff received a letter from defendant Trudeau forbidding him from requiring students to look at the Abu Ghraib photographs. (Plaintiff's Affidavit ¶ 10, Exhibit D)

This letter, presumably in response to the letter from the ACLUM, arguably rescinded the prohibition on using Abu Ghraib photographs. The next day plaintiff had a conference with Trudeau in which Trudeau said that it was acceptable to use the Abu Ghraib photographs providing that plaintiff warned the students that the photographs might be upsetting and offered to give a substitute assignment. (Plaintiff's Affidavit ¶ 10) Since this is how the plaintiff handled the assignment from the start, the issue should have been resolved.

Contemporaneous with these events plaintiff's course assignments for the coming year were finalized. At a department meeting on May 11, the chairman of the social studies department confirmed that plaintiff would be teaching the Current Events courses in the coming year. (Plaintiff's Affidavit ¶¶ 11-12) Notwithstanding this confirmation, in June the department chairman told plaintiff that there had been more "fallout" from the "current events incident" and that he would not be teaching Current Events next year after all. The department chair told plaintiff that he was acting upon instructions from defendant Trudeau, who had told him that he had received his instructions from defendant Mattocks. (Plaintiff's Affidavit ¶ 14)

I.  PLAINTIFF IS LIKELY TO PREVAIL ON HIS CLAIM THAT HIS RIGHTS ARE BEING VIOLATED.

The law governing a teacher's claim that his First Amendment rights have been violated is spelled out in *Ward v. Hickey*, 996 F.2d 448, 452-53 (1st Cir. 1993). As explained in that case, school officials violate the First Amendment if they retaliate against a teacher's exercise of constitutionally protected speech. To establish such a First Amendment violation, plaintiff must show that (1) what he did was constitutionally protected; and (2) what he did was a motivating factor in the action taken against him. *Id.* at 452, citing *Mount Healthy City Sch. Dist. of Educ.*,

429 U.S. 274, 287 (1977) and *Miles v. Denver Public Schs.*, 944 F.2d 773, 775 (10th Cir. 1991).

    A.      What Plaintiff Did Was Constitutionally Protected.

As an initial matter, notwithstanding that he was teaching a class, plaintiff retained his First Amendment right to free speech in connection with teaching the Currents Events class. *Ward v. Hickey*, 996 F.2d at 452, citing *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506 (1969). Indeed, regulation of a teacher's classroom speech is permitted only if the regulation is reasonably related to a legitimate pedagogical concern, *Ward v. Hickey*, 996 F.2d at 453, citing *Hazelwood School Distrct, v. Kuhlmeier*, 484 U.S. 260, 273 (1988). The determination of whether a regulation is reasonably related to legitimate pedagogical concerns depends on the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation, among other things. *Ward v. Hickey*, 996 F.2d at 452; *Mailloux v. Kiley*, 448 F.2d 1242, 1243 (1st Cir. 1971).

Given this criteria, plaintiff submits that a regulation prohibiting the use of the Abu Ghraib photographs could not be reasonably related to any legitimate pedagogical concern. Here, the age and sophistication of the students weighs heavily against restrictions on the manner in which a Current Events class is taught. 25 of the 28 students in the Current Events class were seniors. (Plaintiff's Affidavit ¶ 6) Quite literally, any one of these students could find him or herself at the Abu Ghraib prison, guarding Iraqi prisoners, within months of the May 10 assignment. The course description for the Current Events class says that students are expected to read a weekly periodical. (Plaintiff's Affidavit ¶ 5, Exhibit A) If the students were expected to read a weekly periodical, it stands to reason that they would be expected to have the sophistication to deal with the material contained in such a periodical. And as of May 10, the weekly news periodicals were

filled with stories and photographs of the Abu Ghraib prison. (Plaintiff's Affidavit ¶ 6)

Assignments involving the Abu Ghraib photographs are also entirely consistent with the educational objective of the Current Events course: to introduce students to the contemporary social, political, economic and cultural world. (Plaintiff's Affidavit ¶ 5, Exhibit A) In *Keefe v. Geanakos*, 418 F.2d 359 (1969), the First Circuit commented on a teacher's use of an obscene word as follows

> With regard to the word itself, we cannot think that it is unknown to many students in the last year of high school, and we might well take judicial notice of its use by young radicals and protesters from coast to coast.

*Id.* at 361. Plaintiff submits that it cannot be realistically thought that the events at Abu Ghraib and the associated photographs were unknown to many of the senior year students in his Current Events class.

Indeed, it is hard to imagine a legitimate pedagogical objective that would be served by censoring materials relating to Abu Ghraib. Like it or not, Abu Ghraib was an important current event in the spring of 2004. Whatever the defendants' views of those events, when they sought to censor plaintiff's teaching with respect to those events, they infringed upon his First Amendment rights.

But there is a further reason for concluding that plaintiff's speech in the Current Events class was protected by the First Amendment: defendants had not prohibited speech relating to Abu Ghraib in advance. *Ward v. Hickey*, 996 F.2d at 453, *Mount Healthy City Bd. of Educ.*, 429 U.S. 274, 284 (1977)(classroom speech constitutionally protected when school board did not suggest that teacher violated any established policy). As the First Circuit explained, "[f]ew subjects lack

controversy. If teachers must fear retaliation for every utterance, they will fear teaching." *Ward v. Hickey*, 996 F.2d at 453. And as the Supreme Court warned in *Keyishian v. Board of Regents*, 385 U.S. 589, 604 (1967), "the danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being proscribed."

Here, plaintiff received no warning whatsoever prior to May 10 that use of the Abu Ghraib photographs was not permitted. The description of the Current Events course in the course catalog recites that "[d]iscussion of current events at the national and international levels is the main focus of the course." Discussion of what happened at the Abu Ghraib prison and the photographs allegedly depicting those events is exactly the kind of discussion contemplated by the course catalog. Furthermore, the events at the Abu Ghraib prison and the photographs had been prominently featured in the newspapers and on television. Abu Ghraib was clearly a "current event." Nothing whatsoever would have warned the plaintiff as of May 10 that use of the Abu Ghraib photographs in his Current Events class would be considered inappropriate.

That plaintiff had no warning that school officials would disapprove of his assignment is dispositive that his use of the Abu Ghraib photographs was constitutionally protected speech. Under the circumstances, any action taken against him as a result of that speech is a violation of his rights under the First Amendment.

B.   Plaintiff's Speech Was a Motivating Factor in the Action Taken.

Defendants' attempt to remove plaintiff as the Current Events teacher for the coming academic year results from his assignment involving the Abu Ghraib photographs. The evidence of defendants' motivation comes from several sources.

-6-

First, this is what the plaintiff was told. When his department chairman told him in early June that he would not be teaching Current Events in the coming year, the chairman told him that the change in teaching assignment was "fallout" from the "current events incident." (Plaintiff's Affidavit ¶ 14) Plaintiff was also told that the restrictions on the use of Abu Ghraib photographs were prompted by a complaint from a parent. (Plaintiff's Affidavit ¶ 8) But the motivation for that complaint was a disagreement with plaintiff's point of view; the parent's concern was that plaintiff's presentation was "unbalanced" because he should also have had students view pictures of the beheading of Nicholas Berg. (Plaintiff's Affidavit ¶ 13) The necessary implication is that plaintiff's reassignment was a reaction to plaintiff's political perspective. To the extent that defendants were motivated by plaintiff's political views, what they have done is entirely repugnant to the First Amendment.

The second source of evidence is the lack of any other event which would make it necessary or appropriate to change plaintiff's teaching assignment. The teaching assignments in plaintiff's department were final on May 11, their having been discussed and formulated throughout the spring. (Plaintiff's Affidavit ¶¶ 11-12) Since then here has been no change in the courses to be taught in the coming year, no change in the teachers available to teach those courses and no other personnel or administrative factor that would justify a change in the plaintiff's teaching assignment. (Plaintiff's Affidavit ¶ 15) Indeed, plaintiff has received excellent evaluations of his teaching in this and other courses in the past and the enrollment for this elective course has grown tremendously while plaintiff has been the assigned teacher.

The third source of evidence are the pretexts that defendants have offered for the change in teaching assignments. Defendant Trudeau, in his letter of June 15 refers to "unforeseen

circumstances resulting from the firing and rehiring of staff." There was no hiring and firing of staff in plaintiff's department. (Plaintiff's Affidavit ¶ 15, Exhibit F) Defendant Mattocks' letter denying plaintiff's grievance[1] claims that there was good reason for plaintiff's reassignment because he showed poor judgment in assigning his Current Events class to watch Nicholas Berg's beheading on the Internet. That justification is clearly pretextual because there was no such assignment nor any mention of the Nicholas Berg incident in connection with plaintiff's grievance. (Plaintiff's Affidavit ¶ 16, Exhibit G)

What the evidence shows is a complete about-face in plaintiff's assignment for the coming year. The change in assignment comes (1) well after assignments for the coming year had been finalized; (2) immediately after a disagreement between plaintiff and the defendants over concerning the Abu Ghraib photographs; (3) in the absence of any other factor which would make a reassignment necessary or appropriate. The evidence clearly shows that the decision that plaintiff not teach Current Events for the coming year was motivated by plaintiff's decision to include Abu Ghraib in his course plan. That inclusion is, however, protected by the First Amendment.

II.     THE BALANCE OF INJURY STRONGLY FAVORS THE PLAINTIFF.

The other requisites for granting a preliminary injunction are clearly satisfied here. It is well established that a deprivation of rights secured by the First Amendment is irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Keefe v. Geanakos*, 418 F.2d 359, 363 (1969)("we are not persuaded by the district court's conclusion that no irreparable injury is involved because the plaintiff, if successful, may recover money damages. Academic freedom is not preserved by

---

[1] Plaintiff challenged his reassignment as a breach of the collective-bargaining agreement with the Bellingham public schools and did not raise First Amendment issues.

compulsory retirement, even at full pay").

Furthermore, the injury to plaintiff outweighs any harm which granting injunctive relief would inflict on the defendants. Indeed, there is no showing that any harm would be inflicted upon the defendants if they are required to allow plaintiff to teach Current Events for the coming year. Plaintiff is clearly qualified to teach the course, the course has gained immensely in popularity since plaintiff has been teaching it and there is no showing of any administrative or other inconvenience that would result from implementing the teacher assignments which were finalized just a couple of months ago.

Finally, the public interest would be served by an injunction. It is in the public interest for the students of Bellingham high school to discuss matters which figure prominently in the news in a Current Events class. It is not in the public interest that complaining parents or compliant school officials be allowed to dictate what newsworthy events will be discussed. Censorship is simply not in the public interest.

## CONCLUSION

For the foregoing reasons, plaintiff's request for a preliminary injunction should be allowed.

BRIAN NEWARK

By his attorneys,

_Leonard M. Singer_
BBO 464600
Craighead Glick LLP
277 Dartmouth Street
Boston, Massachusetts 02116
(617) 859-8200


_Sarah R. Wunsch_ by LMS
BBO 548767
American Civil Liberties Union of
    Massachusetts
99 Chauncy Street
Boston, Massachusetts 02111
(617) 482-3170

-10-